WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Verco Decking, Inc.,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>Consolidated Systems, Inc.,<br><br>    Defendant/Counterclaim-Plaintiff. | No. CV-11-2516-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff's Rule 12 Motion to Dismiss Counterclaims and Strike Affirmative Defenses. (Doc. 49.) For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

On December 20, 2011, Verco Decking, Inc. ("Verco") filed a Complaint for Patent Infringement against Consolidated Systems, Inc. ("CSI"). (Doc. 1.) Verco alleges that CSI infringed United States Patent No. 6,212,932 ("the '932 patent") and 6,397,469 ("the '469 patent"). (*Id.* at 2–6.) The '932 patent is a device patent covering a tool used to form structural louvers, and the '469 patent is a method patent covering, *inter alia*, the use of the '932 tool to secure workpieces together. (*Id.*) CSI filed an Answer (Doc. 7), which it later amended (Docs. 18, 19), asserting various counterclaims and affirmative defenses. Verco moved to dismiss and strike some of the counterclaims and affirmative defenses in both the original and amended answers. (Docs. 14, 16, 23.)

On June 7, 2012, the U.S. Patent and Trademark Office ("PTO") granted CSI's request for *ex parte* reexamination procedures of the '932 and '469 patents. (Doc. 28 at

2.) This Court granted a stay pending the outcome of the reexamination and denied without prejudice Verco's motions to dismiss and strike. (Doc. 28.) As a result of the *ex parte* reexamination, the PTO rejected all of the claims in the '932 and '469 patents in March 2013. (Doc. 44-5.)

Although this was a final rejection of the patents, Verco submitted an after-final Request for Reconsideration. (Doc. 44-5.) As a result of the reconsideration, the PTO issued reexamination certificates for the '932 and '469 patents in May and June 2013. (Docs. 31, 32.) The reconsideration of the reexamination of the '932 device patent found it patentable but the language of Claim 1 was amended. (Doc. 32-1.) Claims 2–9 of the '932 patent were not amended but are dependent on the amended claim. (*Id.*) The reconsideration of the reexamination of the '469 method patent resulted in confirmation of claims 1–15 without amendment. (Doc. 32-2.) After the PTO's reconsideration of the reexaminations, this Court lifted the stay. (Doc. 33.)

Verco then filed an Amended Complaint, incorporating the outcome before the PTO. (Doc. 35.) CSI filed an Answer and Verco again moved to dismiss and strike some of the counterclaims and affirmative defenses. (Docs. 37, 43.) CSI filed an Amended Answer and the Court found the motion to dismiss and strike to be moot. (Docs. 44, 50.) Verco now brings this Motion to Dismiss Counterclaims and Strike Affirmative Defenses based on CSI's Amended Answer. (Doc. 49.)

## DISCUSSION

### I. Motion to Dismiss

Verco moves for the Court to dismiss several of CSI's counterclaims. Those requests are denied as to the claims of invalidity in Counts I and II, but granted as to the claim of intervening rights in Count VI.

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) is designed to "test the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* However, there is no

> probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

When analyzing a complaint for the failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). Counterclaims are just claims made by a defendant and the rules and cases establishing pleading standards for claims in complaints apply equally to counterclaims in answers. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

There is no special exception to these general pleading standards that applies to patent cases. While the Federal Circuit recently held that the sufficiency of a claim for

"direct infringement is to be measured by the specificity required by Form 18," that holding is limited to claims for which there are sample pleadings in the Appendix of Forms. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) ("The Forms are controlling only for causes of action for which there are sample pleadings."). Because there are no sample pleadings in the Appendix of Forms for claims alleging invalidity or intervening rights, those counterclaims are not governed by any of the forms, including Form 18. The claims are governed instead by the general pleading requirements established in *Twombly* and *Iqbal*. *See id.* at 1337.

**B.  Invalidity**

Verco asks the Court to dismiss Counts I and II, which seek a declaratory judgment that the '932 and '469 patents are invalid. Verco argues that CSI's allegations of invalidity are not plausible because nine of the ten previous patents that CSI identified were already reviewed by the PTO and the final one was known to CSI before reexamination. Verco argues that because CSI presents no truly new evidence and faces a higher standard of proof in this Court than it did in front of the PTO, it is unlikely that CSI will succeed here after failing there.

The validity of a patent can be challenged through a reexamination proceeding at the PTO or through a suit in the district courts. These two forums "take different approaches," "consider different evidence," "have different standards of proof," "and on the same evidence could quite correctly come to different conclusions." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988).

Counts I and II allege invalidity and will not be dismissed for failure to state a claim. CSI identifies the statutory provisions which form the legal basis for its claims and provides references to previous patents which form the factual basis. This provides Verco with adequate notice and presents a claim that is plausible on its face and not speculative.

Verco's motion, although utilizing the term plausibility, is actually an argument about probability. Verco argues that it is unlikely that CSI will succeed with no new evidence and a higher standard of review. But even if the Court accepted the argument

that a win in this Court is unlikely after the loss at the PTO, a motion to dismiss cannot be granted merely because the judge finds the claims improbable. Furthermore, this Court is free to reach a different conclusion than the PTO. In fact, the PTO has vacillated in its own conclusions; first granting the patents after prosecution, then invalidating them during reexamination, before finally confirming the patents again after reconsideration.

### C.     Intervening Rights

Verco also asks the Court to dismiss Count VI, which seeks a declaratory judgment that CSI has intervening rights in the '469 method patent. Verco argues that CSI's claim fails because intervening rights are predicated upon the existence of a new or amended claim, and the claims in the '469 method patent are neither new nor amended.

The doctrine of intervening rights is codified in 35 U.S.C. § 252 and "originated as a defense against patents modified through reissue procedures." *Marine Polymer Techs., Inc. v. Hemcon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012). The doctrine has since been extended by statute to the context of reexaminations. *Id.* (citing 35 U.S.C. §§ 307(b), 316(b)) "Intervening rights do not accrue, however, where the accused product or activity infringes a claim that existed in the original patent and remains 'without substantive change' after reissue." *Id.* at 1362. The first question when assessing intervening rights under § 307(b), is "whether the asserted claim is 'amended or new;' if the answer is no, that ends the inquiry." *Id.* at 1363. The second question is "whether those literal amendments to the claim language had effected substantive changes in claim scope." *Id.*

Here, Count VI alleging intervening rights is dismissed because the relevant facts are undisputed and the claim is not plausible on its face. The statute creating intervening rights after reexamination proceedings and the *Marine Polymer* case interpreting it clearly require that there must be a new or amended claim. There is no dispute that the claims in the '469 method patent are neither new nor amended. Because there are no amended or new claims, the Court does not even have to consider the second question about whether the amendments were substantial changes.

CSI's other arguments do not resolve its failure to meet the threshold requirement

- 5 -

of a new or amended claim. CSI argues that the amended language in the first claim of the '932 device patent will affect the scope and construction of the claims in both patents. While this will likely be the case during claim construction, the court in *Marine Polymer* made it clear that the issue was whether there was a new or amended claim and not whether other things that happened during the reexamination might affect the interpretation of a claim whose words remained unchanged. *Id.* at 1365. CSI further argues that the patents were initially filed as a single patent and that it would be impractical to grant intervening rights as to the device and not to the method. But intervening rights can only be granted on new or amended claims and not on the patent as a whole. Even if the '932 and '469 patents where still combined as a single patent, CSI would only be able to assert intervening rights as to the one claim that was amended. *Id.* at 1362 (Noting that intervening rights are available "only with respect to 'amended or new' claims in the reexamined patent.").

**II.     Motion to Strike**

Next, Verco moves for the Court to strike several of CSI's affirmative defenses and also to strike the remaining references to inequitable conduct. Those requests are denied in part and granted in part.

    **A.     The Affirmative Defenses**

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense." "Motions to strike are generally regarded with disfavor, but are proper when a defense is insufficient as a matter of law." *Torres v. Goddard*, 2007 WL 4287812, at *3–4 (D. Ariz. Dec. 3, 2007). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Na'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

Federal Rule of Civil Procedure 8 provides the general rules for all pleadings, but it is divided into separate subparts governing the pleading of claims, defenses, and affirmative defenses. The subpart governing affirmative defenses is Rule 8(c), which provides that "[i]n responding to a pleading, a party must affirmatively state any

avoidance or affirmative defense." This Court has previously rejected arguments that affirmative defenses should be subjected to the heightened pleading standards of *Twombly* because Rule 8(c) lacks the language from Rule 8(a) requiring a "short and plain statement of the claim showing the pleader is entitled to relief." *J & J Sports Prods., Inc. v. Khachatrian*, CV-10-1567-GMS-PHX, 2011 WL 720049, at *1 n.1 (D. Ariz. Feb. 23, 2011). Some courts, citing to Rule 8(b), have found that affirmative defenses which merely state a cause of action, such as laches, are insufficient. *See, e.g.*, *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004). Rule 8(b) is the subpart governing defenses, and similar to the language in Rule 8(a), it requires that a party "state in short and plain terms its defenses." However, this Court finds it persuasive that affirmative defenses are governed by a separate subpart and chooses to follow those courts that do not import the requirements for defenses from Rule 8(b). *See, e.g.*, *Pickern v. Chico Steakhouse, LP*, 12-CV-02586-TLN-CMK, 2013 WL 4051640 (E.D. Cal. Aug. 8, 2013).

Accordingly, the only pleading requirement for an affirmative defense, as opposed to a defense or a claim, is that "a party must affirmatively state" it. Fed. R. Civ. P. 8(c)(1). That affirmative statement merely needs to give fair notice by meeting traditional notice-pleading standards. *See Wyshak*, 607 F.2d at 827 (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957)). Although the Supreme Court has abrogated the notice-pleading, "any set of facts" standard from *Conley*, it did so only in the context of claims in a complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007). The pleading of affirmative defenses is governed by a separate subpart of Rule 8 and this Court declines to read in the requirements from other subparts of Rule 8 or the cases interpreting them.

Here, Verco moves to strike CSI's second, fifth, sixth, and seventh affirmative defenses. For the following reasons, the Court will not strike these affirmative defenses.

Verco asks the Court to strike CSI's Second Affirmative Defense, which alleges that the patents are invalid. The affirmative defense of invalidity is sufficiently pleaded because it gives Verco fair notice. In fact, Verco all but concedes that it has been fairly

apprised when it recognizes the affirmative defense as "the same insufficient invalidity arguments that failed before the USPTO during reexamination." (Doc. 49:14–15.) Although Verco believes that CSI's attempt to relitigate these claims is implausible, CSI is not required to plead its affirmative defenses in a way that meets the plausibility standard from *Twombly* for pleading claims.

Next, Verco asks the Court to strike CSI's Fifth and Sixth Affirmative Defenses, but only to the extent that they rely on the invalidity of the patents-in-suit. At the outset, it is not clear how the Court would even grant such relief. Although the Court may strike an insufficient defense, it cannot rewrite CSI's pleadings or remove the parts of sentences that reference invalidity. Regardless and for the reasons just discussed, Verco has been given fair notice of the invalidity claims and the Fifth and Sixth Affirmative Defenses are not insufficiently pleaded to the extent they rely on invalidity.

Verco also raises additional arguments against the Fifth and Sixth Affirmative Defenses, essentially arguing that they are insufficiently pleaded and lack factual support. Again seeking a piecemeal edit, Verco suggests that the Court could strike the part of the Fifth Affirmative Defense related to estoppel while leaving the part related to laches. These arguments fail because the Fifth and Sixth Affirmative Defenses give fair notice and do not need to meet a higher pleading standard.

Finally, Verco asks the Court to strike CSI's Seventh Affirmative Defense, but only to the extent that it includes the '469 method patent. This request to strike is predicated on the legal argument discussed above that CSI can have no intervening rights as to the '469 patent. Although the Court granted the motion to dismiss Count VI, there is no reason to strike the Seventh Affirmative Defense. In it, CSI does not claim that it has intervening rights as to the '469 patent. It merely alleges generally that Verco's claims "are barred by CSI's intervening rights." This Court will not strike this affirmative defense because it gives Verco fair notice as to the alleged intervening rights in the '932 patent.

### B.      The Remaining References to Inequitable Conduct

In addition to allowing a court to strike insufficient defenses, Rule 12(f) also allows a court to strike "any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.'" *Skydive Ariz., Inc. v. Quattrochi*, 2006 WL 2460595, at *3 (D. Ariz. Aug. 22, 2006) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994)). "'Impertinent matter consists of statements that do not pertain, and are not necessary to the issues in question.'" *Id.* (internal quotations omitted). "Scandalous material is that which 'cast[s] an excessively adverse light on the character of an individual or a party.'" *Reichert v. Nat'l Credit Sys., Inc.*, 2005 WL 55549677, at *4 (D. Ariz. March 31, 2005) (quoting *OKC Corp. v. Williams*, 461 F. Supp. 540, 550 (N.D. Tex. 1978)).

The "function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1247 (E.D. Cal. 2010) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1380 (2d ed.1990)).

Here, although previous versions of the answer contained an affirmative defense and counterclaim based on inequitable conduct, the current Amended Answer does not. (Docs. 37, 44.) The Amended Answer does contain two paragraphs that reference deceptive intent and inequitable conduct in the "Factual Allegations Common to All Counts" portion of the Counterclaim section. (Doc. 44 at 16:9–11, 17:14–19.) It also contains a prayer for relief in the Counterclaim section that asks the Court to declare the patents unenforceable because of inequitable conduct during the reexamination proceedings. (Doc. 44 at 23:25–27.)

The two references to deceptive intent and inequitable conduct in the facts section cannot be struck as insufficiently pleaded defenses. They are only included as factual allegations to support the counterclaims. They can only be struck if they can be considered a "redundant, immaterial, impertinent, or scandalous matter." Here the references, while couched in legal terms, are part of the factual foundation of the claims and they at least pertain to and have an important relationship with the claims and issues raised. They also do not cast an excessively adverse light on the character of Verco. Therefore, the Court will not strike the two paragraphs in the factual allegation.

Finally, the Court strikes without prejudice the prayer for relief that is based on inequitable conduct because in its current form it is an insufficient defense. Although CSI previously included inequitable conduct as an affirmative defenses and a counterclaim, the current Amended Answer only contains a prayer for relief based on inequitable conduct. (Docs. 37, 44.) CSI admits that it intended to withdraw the claims of inequitable conduct. (Doc. 55 at 2 n.2.) The prayer for relief that remains is an insufficient defense that the Court now strikes. The Court makes no finding on the merits of an inequitable conduct defense in this case. CSI may, if otherwise permitted, attempt to amend its pleadings to include an inequitable conduct defense or counterclaim in the future.

**IT IS HEREBY ORDERED** that Plaintiff's Rule 12 Motion to Dismiss Counterclaims and Strike Affirmative Defenses (Doc. 49) is **granted in part and denied in part.**

Dated this 20th day of December, 2013.

*A. Murray Snow*
G. Murray Snow
United States District Judge